**UNITED STATES of America ex rel. Harvey FOREMAN, Petitioner,**

v.

**Edward M. FAY, as Warden of Green Haven Prison, Stormville, New York, Respondent.**

United States District Court
S. D. New York.

June 1, 1960.

536

Anthony F. Marra, New York City, for petitioner; Edward Q. Carr, New York City, of counsel.

Louis J. Lefkowitz, Atty. General of State of New York, for respondent; Philip Weinberg, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Relator Harvey Foreman has petitioned this Court for a writ of habeas corpus.[1] He is presently incarcerated in Green Haven State Prison in Stormville, New York, where respondent is warden. He was convicted on his plea of guilty to a charge of Robbery in the First Degree[2] in the County Court of Kings County, New York. On June 22, 1955, relator was sentenced as a second

---

1. Relator's petition was originally denied by this Court in an opinion filed March 1, 1960. By petition for reargument filed May 16, 1960, relator put additional facts

before the Court which resulted in the instant proceedings.

2. New York Penal Law § 2124.

felony offender to a prison term of not more than 30 nor less than 15 years.[3]

The prior felony relied upon by the sentencing court was relator's January 29, 1943 conviction in the Magistrate's Court of York County, Toronto, Canada. On that date he pleaded guilty to two informations [4] charging him with breaking and entering, and attempting to break and enter, with the intent to commit an indictable offense therein.[5] It is the constitutional validity of that Canadian conviction, as the basis of his New York sentence as a second offender, which relator seeks to challenge by the instant petition.

In order to explore the circumstances surrounding the Canadian conviction this Court issued a writ of habeas corpus ad testificandum to respondent. On May 24, 1960 petitioner was produced and the hearing took place.

Before the facts developed at that hearing may be discussed, however, certain threshold issues must be disposed of. First, it should be noted that the petitioner does not dispute the right of the State of New York to use a Canadian conviction in the application of its multiple offender law. That is a matter of state procedure and presents no federal question. United States ex rel. Dennis v. Murphy, 2 Cir., 1959, 265 F.2d 57, 58; United States ex rel. Read v. Martin, 2 Cir., 1959, 263 F.2d 606.

The respondent, on the other hand, does not dispute petitioner's right to challenge the Canadian conviction on due process grounds, in the same manner in which he could challenge a conviction in a sister state if it were used by New York to increase his sentence. See United States ex rel. Dennis v. Murphy, supra; United States ex rel. Dennis v. Murphy, D.C.N.D.N.Y.1959, 184 F.Supp. 384, opinion on remand, sustaining the writ.

The respondent contends, however, that the validity of the Canadian conviction need not be determined at this time because (a) the petitioner has failed to exhaust his state remedies [6] and (b) his present petition is premature.

█ Respondent's first contention may be dealt with briefly. The petitioner has no remedies to exhaust in the New York courts. The State of New York " * * * will not entertain an attack on a judgment of conviction entered in another state." United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349, 351.[7] As to the possibility of a New York prisoner attacking his Canadian conviction in a Canadian court, the Court of Appeals for the Second Circuit has stated:

"We do not believe 28 U.S.C. § 2254 requires relator, in his present position, to exhaust whatever remedies may exist in a foreign country and * * * the requirement of exhaustion of other remedies is deemed to have been complied with. United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349." United States ex rel. Dennis v. Murphy, 2 Cir., 1959, 265 F.2d 57, 58.

---

3. New York Penal Law §§ 1941, 2125.

4. Petitioner's Exhibits 2 and 3.

5. See Criminal Code of Canada § 461 (Petitioner's Exhibit 1). It was agreed among counsel at the hearing on the instant petition that the convictions for the substantive crime and the attempt were treated by the New York sentencing judge as one prior conviction. It was further agreed that the two prior convictions were rendered at the same time under exactly the same circumstances, and that they might be treated for the purposes of the petition as one. (See Tr.

pp. 5–6). Thus, if it were found on the facts that one of the Canadian convictions was defective, that same finding would automatically apply to the other. In the future, therefore, the two pleas of guilty on January 29, 1943 will be referred to as "the Canadian conviction."

6. 28 U.S.C. § 2254.

7. See also United States ex rel. Smith v. Jackson, 2 Cir., 1956, 234 F.2d 742, 747; People v. McCullough, 1949, 300 N.Y. 107, 89 N.E.2d 335, certiorari denied 1950, 339 U.S. 924, 70 S.Ct. 615, 94 L.Ed. 1346.

The "state" remedies available to the relator being deemed exhausted therefore, the sole remaining question (other than the determination on the facts) is whether the instant petition is premature.

■ Respondent points out that relator has served less than 5 years of his 15 to 30 year sentence. He further alleges that the minimum sentence for First Degree Robbery in New York is ten years imprisonment.[8] Respondent argues, therefore, that even if petitioner had been sentenced as a first offender, he would not be eligible for release at this time, and thus the validity of the prior Canadian conviction is irrelevant. It is respondent's position that the federal writ of habeas corpus is available only when granting the writ would entitle the prisoner to immediate release. See, e. g., United States ex rel. Smith v. Martin, 2 Cir., 1956, 239 F.2d 530. Cf. Holiday v. Johnston, 1941, 313 U.S. 342, 349, 61 S.Ct. 1015, 85 L.Ed. 1392; McNally v. Hill, 1934, 293 U.S. 131, 138, 55 S.Ct. 24, 79 L.Ed. 238.

■ Respondent overlooks, however, the authoritative array of cases in which the writ was sustained because the prisoner, upon resentencing, *might* be sentenced to a term which had already expired. As was stated in United States ex rel. Smith v. Martin, 2 Cir., 1957, 242 F.2d 701:

"The federal writ of habeas corpus * * * can issue only to release a prisoner from custody, *or* to order a resentencing where it is *possible* that on resentence he will be sentenced to no more than the period he had already served." (Emphasis supplied.)

In another case the Second Circuit Court of Appeals rejected an argument that the petition was premature because the prisoner had not served the maximum sentence he might have received as a first offender, with the words:

"* * * there is no reason to assume that the petitioner would have received the maximum sentence for his crime if he had been sentenced as a first offender. If the Virginia conviction was erroneously taken into account, Smith is entitled to resentence as a first offender. See United States v. Morgan, 2 Cir., 1953, 202 F.2d 67, 68, affirmed 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L. Ed. 248. On resentence the term imposed might well be less than the nine years he has already served." United States ex rel. Smith v. Jackson, 2 Cir., 1956, 234 F.2d 742, 749.[9]

Thus, the question is reduced to whether upon being resentenced, as of the date of his original sentence, as a first offender, this petitioner might be sentenced to a term which he has already served.

While the minimum sentence for First Degree Robbery under New York Penal Law § 2125 is ten years imprisonment, there are other provisions available under which offenders like the relator may be sentenced. For instance, a *first offender* between the ages of 21 and 30,[10] convicted of a felony in 1955, might have been sentenced to a reformatory term not to exceed 5 years.[11] Thus, petitioner's status as a second offender at the time of his original sentencing rendered unavailable to the sentencing judge a sentence which would by now have expired.[12]

8. New York Penal Law § 2125.

9. See also, United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349, 355; People ex rel. Bowers v. Fay, D.C. S.D.N.Y.1958, 171 F.Supp. 558, 562, affirmed 2 Cir., 1959, 266 F.2d 824; United States ex rel. Dennis v. Murphy, D.C. N.D.N.Y.1959, 184 F.Supp. 384.

10. It is undisputed that Foreman was born on August 9, 1925 and that he was under 30 years of age on June 22, 1955, the date of his New York sentence. (See Tr. p. 6).

11. See New York Penal Law § 2185; New York Correction Law § 288.

12. It is also possible that petitioner might originally have received a suspended sentence upon his conviction in New York. New York Penal Law § 2188 makes suspension of sentence generally available except in certain circumstances, one of

The language quoted above from United States ex rel. Smith v. Martin and United States ex rel. Smith v. Jackson, supra, seems to imply that a resentencing would have to be ordered whenever it was established (a) that a prior conviction which was taken into consideration when imposing sentence was invalid and (b) that the sentencing judge *might* at the time of the original sentence have imposed a prison term which at the time of the application for the writ would have expired.[13] However, the reformatory sentence under New York Penal Law § 2185, which would by now have expired, was *foreclosed* to the sentencing judge as an alternative sentence, so long as Foreman was considered a second felony offender. Thus, to order a resentencing in this case is not to order that the state judge consider imposing a sentence which he decided in his discretion not to impose once before, but to allow him for the first time to take into consideration an alternative sentence not previously open to him.[14]

I find that the instant petition is neither premature nor defective for failure to exhaust "state" remedies, and I shall therefore proceed to the factual questions upon which the issuance of the writ depends.

The legal framework within which this factual determination must be made has been recently summarized by the Court of Appeals:

" * * * where a conviction in a non-capital case has been based upon a plea of guilty in a state court, a mere allegation that petitioner was of low intelligence and neither had nor was offered a lawyer at the time the plea was entered will not suffice. Cf. Quicksall v. People of State of Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188. There must be some showing that the attendant circumstances were such as to make it appear that there was some essential unfairness in the state court proceedings. United States ex rel. Turpin v. Warden of Green Haven Prison, 2 Cir., 190 F.2d 252. On the other hand, it seems clear to us that the sufficiency of the showing cannot depend upon the use of any precise formula * * *."[15]

---

which is "(c) if the person is convicted of a felony committed while armed with a weapon * * *." While the original charge against petitioner was Assault and Robbery with a gun, the final charge was Robbery in the First Degree. (See Respondent's Exh. A). Under New York Penal Law § 2124 which defines Robbery in the First Degree, it is not necessary that the crime have been committed with a weapon. It is not clear, therefore, from the record before me, whether a suspended sentence was available to the New York sentencing judge on June 22, 1955.

It should be noted, moreover, that a suspended sentence is available for a first or second offender. See New York Penal Law § 2188.

13. For instance, it is arguable that a resentencing would have to be ordered when the offender could originally have been sentenced to any minimum between 5 and 20 years, as either a first or a second offender, was in fact sentenced to 20 years as a second offender, and had served 6 years at the time of his petition for the writ.

14. Where, as in the example in note 13, supra, the state sentencing judge had the power to impose the sentence which he did on the defendant as either a first or second offender, but imposed the sentence in the erroneous belief that the defendant was a second offender, a different situation is presented, for in such instance the sentencing judge was not prevented from using a sentencing statute which would have been available for first offenders. It is not necessary in the instant case, however, to express an opinion as to this broader power to order a resentencing when the state sentencing judge was *not* prevented by the defendant's alleged second offender status from utilizing a statute, the sentence under which by the time of the application for the writ, would have expired.

15. United States ex rel. Marcial v. Fay, 2 Cir., 1957, 247 F.2d 662, 667, certiorari denied 1958, 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274. It would seem that the same standard should be applied to a conviction in a foreign country as is applied to a conviction in a sister state, for in either case the utilization in a state of an

At the hearing held on May 24, 1960, the petitioner was the only witness. It was not contraverted that at the time of his Canadian conviction upon a plea of guilty he was but 17 years of age, did not have the assistance of counsel, and that he had left school when he was 15, after having completed the eighth grade.[16] Petitioner contended, moreover, that he did not know that he had a right to counsel, and that neither the presiding judge nor any other person advised him of that right.[17]

The respondent challenged petitioner's contention in regard to counsel by offering evidence (a) that one of petitioner's co-defendants was represented by counsel at the Canadian prosecution; (b) that petitioner himself had been represented by counsel during a previous brush with the law;[18] and (c) that petitioner had previously admitted that he was offered counsel at the Canadian proceeding now in issue.

The alleged admission took place during a habeas corpus hearing in a state court, dealing with petitioner's contention (not raised here) that the Canadian conviction was not a "felony" for purposes of New York law.[19]

The state court proceeding was concerned with another matter and the so-called admission, which at the very best was so qualified that it was no admission at all, was part of a digression. A reading of the transcript of that prior hearing convinces me that everyone involved was hurrying to reach the true subject matter of that inquiry, and was paying little attention to the question as to counsel.

Having observed the petitioner and listened to his testimony, I am inclined to believe his present contention that he was not offered counsel nor did he know he could have counsel. I conclude this not only from his demeanor, but from the scrupulous restraint of his testimony. The judge, prosecuting attorney and clerk who were present at the Canadian conviction are all dead and that fact was made known to petitioner.[20] It would have been impossible for the respondent to produce evidence contradicting whatever story petitioner might have chosen to tell about the circumstances of his conviction. Yet he refrained from making any charges of unfair treatment beyond the prejudice he suffered by deprivation of counsel. He did not make the customary charge of inducement to the plea. When asked if he knew he could have communicated with the outside world while being held prior to trial, he stated that he did know.[21] He was steadfast in maintaining that he drafted his own excellent petition to this court without help, even though he was perfectly well aware that his mental capac-

unconstitutional conviction to increase a sentence works to the prejudice of the party claiming the protection of our constitution. See United States ex rel. Dennis v. Murphy, 2 Cir., 1959, 265 F.2d 57; United States ex rel. Dennis v. Murphy, D.C.N.D.N.Y., 184 F.Supp. 384.

16. Tr. pp. 6–7.

17. Tr. pp. 33, 46.

18. Tr. pp. 39, 26. See certified copy of Information filed June 1, 1942 charging petitioner with receiving stolen goods on May 22, 1942. This information, on the face of which appears "For the accused, G. Beaudoin," was admitted into evidence by stipulation of the attorneys after the conclusion of the hearing. Consequently, it has no exhibit number.

19. Respondent's Exhibit C, transcript of hearing on March 23, 1959, before Justice Robert Doscher of the New York Supreme Court. The relevant colloquy is, in its entirety, as follows:
  "Mr. Foreman: Yes sir, I was also not represented by counsel in that, your Honor.
  "The Court: Did they offer you counsel?
  "Mr. Foreman: Yes.
  "The Court: You refused it?
  "Mr. Foreman: I was ignorant of the facts of the law; seventeen years.
  "The Court: Well, didn't they ask you whether or not you wanted it?
  "Mr. Foreman: I don't rightly remember that."

20. Tr. pp. 21–22.

21. Tr. p. 40.

ity was an important issue at the hearing.[22]

I find, therefore, that petitioner was not represented by counsel at the Canadian conviction under consideration (which is conceded); that he did not know that he had a right to counsel, and that he was not offered counsel. These conclusions preclude any finding that petitioner consciously waived his right to counsel.

As noted above, however, these findings do not dispose of the matter. The inquiry remains whether because of those facts, petitioner was denied due process in his Canadian conviction. The true question is if, under all the circumstances, petitioner was able adequately to defend himself against the charge.[23]

Such further finding depends upon two interrelated factors: (a) the mental competence of the offender and (b) the complexity and difficulty of the charge. The first factor has already been developed at some length. To recapitulate, the petitioner was a 17 year old youth with a grade school education who, before pleading guilty, concededly did not have advice from counsel, relatives or friends. While he makes no claim of mental illness, he contends that he was confused at the time and would not have understood the true nature of the charge

against him. No explanation of the charge was made to him.[24]

The crime with which he was charged, on the other hand, was only superficially simple. In truth, it was complex. His arrest arose from events in the early morning hours of January 25, 1943. He and two other boys attempted unsuccessfully to break and enter a drug store and ultimately succeeded in breaking and entering a cleaning store. They left without taking anything, however. Petitioner was arrested, while he was alone, seven blocks from the scene of the crime. He was charged in an information alleging that he had broken and entered the cleaner's shop "with intent to commit an indictable offense therein," namely "theft".[25] There is no statutory presumption of intent in the section of the Canadian criminal code under which he was charged (§ 461), as there is in similar and related Canadian statutes dealing with dwelling houses, that one who breaks and enters does so with an intent to commit an indictable offense inside.[26] This is of no small significance because it is likely that the Crown, if put to its proof, might have had a difficult time proving the requisite intent, especially since nothing was in fact stolen from the cleaning shop; no contraband was found in petitioner's possession and the petitioner was distant from the scene of

22. Tr. pp. 45, 47–48.
   Nor, do I find it fatal to the petitioner that one of his co-defendants had counsel, or that he himself may have been represented by counsel at a previous and entirely different criminal proceeding when he was approximately 16 years of age. Petitioner testified that though he did speak to his co-defendants prior to his plea of guilty to the Canadian charge, he did not connect the co-defendant's counsel with his own right. He had no idea how his co-defendant had received the help of counsel. (Tr. pp. 39–40).
   As for his own prior representation by counsel, which allegedly occurred in another summary proceeding in which petitioner pleaded guilty (See note 18, supra), petitioner contended that he did not even remember such representation. (Tr. p. 29). I find it quite credible that representation received at a summary pro-

ceeding of this character might be forgotten or even pass unnoticed. There was no evidence of the nature of the representation at this prior summary proceeding, and it was not established that such "representation" even involved speaking to the petitioner.

23. See People of New York ex rel. Bowers v. Fay, D.C.S.D.N.Y.1958, 171 F. Supp. 558, 561, affirmed United States ex rel. Bowers v. Fay, 2 Cir., 1959, 266 F.2d 824.

24. Tr. pp. 11, 16–17, 21, 40.

25. Canadian Criminal Code § 461; see petitioner's Exhibits 1 and 2. I will not discuss the "attempt" charge but only the completed offense. See note 5, supra.

26. See Canadian Criminal Code §§ 457(3), 459, 462.

542

the alleged crime when apprehended.[27] As Judge Brennan stated when discussing the complexity of a similar Canadian statute:

"It is naive to say that an untrained young man could understand the operative elements which must exist in each offense. What constitutes breaking? What offenses are indictable? What evidence is necessary to warrant a finding of intent? These elements are not readily understood by the untrained layman."[28]

The availability of defenses of which the offender, unaided, could not be aware is clearly of significance in determining whether he has been accorded due process.[29] I believe that the crime with which this petitioner was charged in Canada was of such a nature that he could not, at his age and with his experience and mental ability, adequately understand and prepare a defense.

■ I do not hold that the mere fact that counsel might more successfully have defended the petitioner than he could himself means that the deprivation of counsel denied petitioner "the fair hearing secured by the Due Process Clause of the Fourteenth Amendment in a state prosecution."[30] I do believe, however, that the "question to be decided is whether in the circumstances of each case the lack of counsel deprived the defendant of a fair opportunity to advance a defense based upon the facts surrounding each charge."[31] In the circumstances of this case, I find that question answered in the affirmative.

■ I am mindful of the fact that the states do have great difficulty in meeting an attack on the validity of a conviction in another jurisdiction. But, when a state makes the length of the sentence on one conviction depend on a prior conviction elsewhere, it must be prepared to meet attacks on the constitutional validity of that prior conviction.[32]

I conclude therefore that the writ must be sustained to the extent that petitioner's January 29, 1943 Canadian conviction may not be used by the state of New York in determining the sentence of petitioner.

The petitioner will be remanded to the custody of the respondent to be held by him pending proceedings to be promptly taken for petitioner's return to the County Court of Kings County for resentencing upon his conviction of June 22, 1955, such sentence to be imposed as of June 22, 1955, as if petitioner were a first felony offender.

27. See Rex v. Kaehler, 3 D.L.R. 272 (Sup. Ct.Alberta 1945) (convictions under § 461 reversed for failure of proof of intent, where defendants left without taking anything).

28. United States ex rel. Dennis v. Murphy, D.C.N.D.N.Y.1959, 184 F.Supp. 384. See also People of New York ex rel. Bowers v. Fay, D.C.S.D.N.Y.1958, 171 F.Supp. 558, 561, affirmed United States ex rel. Bowers v. Fay, 2 Cir., 1959, 266 F.2d 824 ("It is too much to expect a raw youth, 16 years of age, to be familiar with the legal principle that knowledge * * * was an essential element of the crime charged."); United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F. 2d 349, 352 ("Nor had the relator been advised as to the factual elements of rape or the factual distinctions between the three cognate offenses in the statutory scheme * * *").

29. Moore v. State of Michigan, 1957, 355 U.S. 155, 159, 78 S.Ct. 191, 2 L.Ed.2d 167.

30. Id., 355 U.S. at page 160, 78 S.Ct. at page 193. It is perfectly clear, of course, that the denial of counsel alone does not void a state court conviction when the charges are non-capital. Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595.

31. People of New York ex rel. Bowers v. Fay, D.C.S.D.N.Y.1958, 171 F.Supp. 558, 561, affirmed United States ex rel. Bowers v. Fay, 2 Cir., 1959, 266 F.2d 824. Any less stringent standard of state procedure may be insufficient. See United States ex rel. Farnsworth v. Murphy, 2 Cir., 1958, 254 F.2d 438, 442–444, reversed and remanded summarily, 1958, 358 U.S. 48, 79 S.Ct. 76, 3 L.Ed. 2d 46.

32. United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349, 355.

I should like to express the thanks of the Court to Mr. Edward Q. Carr of the Legal Aid Society for the splendid representation he accorded the petitioner.